**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CAUSE OF ACTION INSTITUTE <br> 1875 Eye Street, NW <br> Suite 800 <br> Washington, DC 20006, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF <br> HOUSING AND URBAN DEVELOPMENT <br> 451 7th Street S.W., <br> Washington, DC 20410 <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 16-1438 |

## COMPLAINT

1. Plaintiff Cause of Action Institute brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking the release of records requested by Cause of Action Institute ("CoA Institute" or Plaintiff) from the United States Department of Housing and Urban Development ("HUD").

## NATURE OF ACTION

**Background**

2. This matter involves a FOIA Request related to HUD's role in three agreements between the federal government and three banks (the "Three Agreements") that issued residential mortgage backed securities ("RMBS").

3. CoA Institute submitted its FOIA request to HUD in July 2015 more than one year ago. HUD has failed to substantively respond this request.

1

4.      The HUD failure to make any determination or produce timely relevant documents in response to this FOIA request violates its legal obligations and is especially damaging given serious questions regarding the HUD role in the Three Agreements.

5.      The Three Agreements, which followed the economic crisis in 2007 and 2008, were ostensibly for billions of dollars.  Under these agreements, the three settling banks could direct up to a total of $13.5 billion of the settlement funds to third party organizations instead of to the federal government.  These payments were allegedly for "consumer relief."  However, they were, and are being, made to HUD-approved Housing Counseling Agencies and to NeighborWorks America ("NeighborWorks"), a congressionally chartered nonprofit organization that is also one of the HUD-approved counseling agencies and whose board of directors includes HUD general counsel.

6.      Because of a concern about the re-direction of settlement funds from the Federal Treasury to third party groups, CoA Institute launched an investigation and submitted a FOIA request to HUD.  Instead of producing responsive records and providing transparency into payment of, potentially, billions of dollars to third party groups, HUD has failed, for more than a year, to produce a single responsive record in response to the CoA Institute FOIA request.

**RMBS**

7.      RMBS are securities backed by loans secured with residential property.  Mortgage loans are purchased primarily from banks and mortgage companies and then assembled into loan pools by another bank or government entity (such as the Government National Mortgage Association ("Ginnie Mae")).  The entity pooling the loans together then issues securities to investors representing claims on the principal and interest payments made by loan borrowers.  Thus, the ability to pay investors is based on, and supported by, monies received from

homeowners' payments of interest and principal pursuant to the terms of individual agreements with mortgage lenders.[1]

8. In the early to mid-2000s demand for RMBS increased greatly and a number of large investment and commercial banks sought to capitalize by increasing sales of these securities to investors, including federally insured financial institutions. Prior to selling the RMBS, the banks did their due diligence on loans (including credit, compliance, and valuation due diligence). When the banks then securitized and issued the RMBS, they would provide representations in offering documents about the characteristics of the underlying loans.

9. Following the economic crisis in 2007 and 2008, which, according to some reports, led to a loss of nearly $11 trillion in household wealth and involved the foreclosure of potentially thirteen million homes[2], government investigations, litigation, and reporting revealed that some banks had, *inter alia,* allegedly received negative information during their diligence process regarding the quality of the underlying mortgage loans. This information conflicted with the representations the banks provided to investors about the pools of loans in the various RMBS.[3]

10. To address these and related issues, President Obama formed an interagency Financial Fraud Enforcement Task Force (the "Task Force"), led by the Department of Justice and including senior level officials from HUD.[4]

---

[1] *See* U.S. Securities & Exchange Commission, *Fast Answers,* https://www.sec.gov/answers/mortgagesecurities.htm (last visited July 8, 2016).
[2] *See* The Financial Crisis Inquiry Commission, *The Financial Crisis Inquiry Report* at 11, 23 (2011), *available at* http://fcic-static.law.stanford.edu/cdn_media/fcic-reports/fcic_final_report_full.pdf.
[3] *See id.* at 165-169, 187.
[4] Financial Fraud Enforcement Task Force, *Task Force Organization and Leadership*, http://www.stopfraud.gov/tfs.html (last visited July 8, 2016).

11.     The Task Force's role involved coordinating "investigations and prosecutions of financial frauds" and maximizing "the ability both to recover the proceeds of these frauds and obtain just and effective punishment of those who commit them."[5]

12.     The Task Force formed a Residential Mortgage-Backed Securities Working Group ("RMBS Working Group") to "investigate RMBS misconduct" and to seek "evidence of false or misleading statements, deception, or other misconduct by market participants (such as loan originators, sponsors, underwriters, trustees, and others) in the creation, packaging, and sale of mortgage-backed securities."[6] In 2013 and 2014, the government – supported by the efforts of the RMBS Working Group – entered into the Three Agreements with three large, national banks.

13.     The federal government (and several states that were also part of the RMBS Working Group) entered into the Three Agreements ostensibly to resolve the government's civil and criminal claims against the banks including claims under the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1833a ("FIRREA") and the False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA"). The Three Agreements are substantially similar and include provisions in which the bank directly pays third party groups in lieu of paying civil and/or criminal fines to the United States Treasury.

**Pre-Suit Settlement**

14.     Although the Three Agreements are styled as "settlements",[7] all of these agreements were reached prior to the occurrence of any court action. In other words, these agreements are all pre-suit "settlements" without any judicial approval or involvement.

---

[5] Financial Fraud Enforcement Task Force, *About*, http://www.stopfraud.gov/about.html (last visited July 8, 2016).
[6] https://www.stopfraud.gov/rmbs.html
[7] *See, e.g.*, Department of Justice, Press Release, "Bank of America to Pay $16.65 Billion in Historic Justice Department Settlement for Financial Fraud Leading up to and During the Financial Crisis" (Aug. 21, 2014)

4

15.     On November 19, 2013 the United States, several states and JP Morgan Chase & Co.[8] entered into an agreement (the "JP Morgan Agreement") resolving federal and state allegations that JP Morgan Chase & Co. knowingly sold billions of dollars in faulty mortgage-backed securities to investors prior to and during the 2008 financial crisis.[9]  The JP Morgan Agreement is allegedly valued at $13 billion and includes "consumer relief" provisions that allow - but unlike the later Citigroup and BoA Agreements (as defined below) do not *require* - "donations" to government-approved third parties.

16.     On July 14, 2014, the United States, several states and Citigroup, Inc.[10] entered into an agreement (the "Citigroup Agreement") resolving federal and state allegations that Citigroup knowingly sold billions of dollars in faulty mortgage-backed securities to investors prior to and during the 2008 financial crisis.[11]  The Citigroup Agreement is allegedly valued at $7 billion and includes "consumer relief" provisions mandating "donations" by Citigroup to government-approved third parties.

17.     Finally, on August 20, 2014, the United States, several states and Bank of America Corporation ("BOA")[12] entered into an agreement (the "BoA Agreement") resolving federal and state allegations that BoA knowingly sold billions of dollars in faulty mortgage-backed securities to investors prior to and during the 2008 financial crisis.[13]  The Department of

---

*available at* https://www.justice.gov/opa/pr/bank-america-pay-1665-billion-historic-justice-department-settlement-financial-fraud-leading).

[8] The agreement involved JP Morgan Chase & Co., as well as numerous subsidiaries; for the purposes of convenience, all of the banking entities in this agreement are referred to as "JP Morgan".

[9] *See* JP Morgan Agreement (November 19, 2013), *available at* https://www.justice.gov/iso/opa/resources/69520131119191246941958.pdf.

[10] The agreement involved Citigroup, Inc., as well as numerous subsidiaries; for the purposes of convenience, all of the banking entities in this agreement are referred to as "Citigroup."

[11] *See* Citigroup Agreement (July 14, 2014), *available at* http://www.justice.gov/iso/opa/resources/471201471413656848428.pdf.

[12] The agreement involved Bank of America Corporation as well as numerous subsidiaries; for the purposes of convenience, all of the banking entities in this agreement are referred to as "Bank of America."

[13] *See* BoA Agreement (Aug. 20, 2014), *available at* http://www.justice.gov/iso/opa/resources/3392014829141150385241.pdf.

Justice values the BoA Agreement at $16.65 billion. The BoA Agreement includes $7 billion dollars in "consumer relief" provisions, a portion of which involves "donations" by BoA to government-approved third parties.[14]

18.     The Three Agreements purport to provide approximately up to $13.5 billion in "consumer relief" including by way of corporate "donations" to unrelated third parties but do not require public disclosure of the particular government-approved beneficiaries or control how those beneficiaries may use these funds, all of which are purportedly being paid as the result of agency action taken to enforce the law and vindicate government interests.

19.     The "consumer relief" provisions allow the banks, the alleged violators, to pay government-approved third parties as a way to satisfy obligations owed the United States and limit payments required, by law, to be made to the United States Treasury. Further, the "consumer relief" provisions do not ensure that the actual victims of the alleged harms are compensated in any identifiable, quantifiable way. Instead, third parties reap the benefit.

20.     The BoA Agreement requires BoA to, *inter alia,* make donations to HUD-approved Housing Counseling Agencies. Utilizing incentive credits, BoA could donate $2 billion to a HUD-approved Housing Counseling Agency and receive $4 billion in settlement credit.[15]

21.     If BoA does not fulfill its consumer relief obligation by August 31, 2018, BoA must pay liquidated damages in an amount equal to the shortfall. BoA must pay 25% of the

---

[14] *See e.g.,* BoA Agreement, *Annex 2 – Consumer Relief* (Aug. 20, 2014), *available at* http://www.justice.gov/iso/opa/resources/8492014829141239967961.pdf ("Annex 2"); The BoA Agreement also includes payment of $800 million for claims of the Federal Housing Administration ("FHA"), an agency within HUD, and $200 million for contractual claims related to Ginnie Mae, a wholly-owned government corporation within HUD. The FHA claims relate to submission of potentially false claims for reimbursement of amounts already recovered from other parties. The Ginnie Mae claims relate to a breach of contract involving BoA's role as a master subservicer for Ginnie Mae mortgage holdings. *See* BoA Agreement at 6-7.

[15] *See* BoA Agreement Annex 2, Menu Items 3.E – 3.G (specifying $100 million in donation minimums, but no maximum). The Bank has an incentive to make such donations, because a $1.00 payment equals a $2.00 credit.

liquated damages amount to NeighborWorks America ("NeighborWorks"), a Congressionally chartered nonprofit organization that is also one of the HUD-approved counseling agencies[16], and 75% of the liquidated damages amount to Interest on Lawyer Trust Accounts ("IOLTA") organizations.[17]

22. Further, the BoA Agreement provided for a tax relief payment account to assist homeowners who may owe additional income tax as a result of modifications made to their mortgages. The BoA Agreement additionally provided that if Congress passed its own tax relief measure any available funds in the account would transfer to NeighborWorks (25% of the surplus) and IOLTA organizations (75% of the surplus).[18]

23. The Citigroup Agreement and JP Morgan Agreement are similar in structure to the BoA Agreement except that while the BoA and Citigroup Agreements require minimum donations to third-party organizations, the JP Morgan Agreement gave the bank the option of making such donations.

24. All three agreements give the banks strong incentives to pay these organizations instead of the Treasury by providing the banks with incentive credits for such donations. For example, the donation component of the consumer relief activities in the BoA Agreement allows BoA to receive a $2.00 credit for every $1.00 given to an approved third party organization and there is also a 115% early incentive credit for donations completed by August 31, 2015. Thus, utilizing incentive credits, BoA could, for example, donate $2 billion to a HUD-approved Housing Counseling Agency and receive $4 billion in settlement credit.

---

[16] The BoA Agreement provides a link (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm) to the list of HUD-approved Housing Counseling Agencies. *See id.* at fn. 22. The website lists NeighborWorks under "Washington, DC" as "NEIGHBORHOOD REINVESTMENT CORP. DBA NEIGHBORWORKS AMERICA."
[17] *See* BoA Agreement Annex 2 at 10.
[18] *See* BoA Agreement Annex 3, *available at* https://www.justice.gov/iso/opa/resources/4922014829141329620708.pdf.

25. Because the Three Agreements allow for donations to potentially go to politically favored organizations and rest on legally dubious grounds in terms of the allocation of funds to third-parties, rather than into the Treasury, CoA Institute launched an investigation and submitted a series of FOIA requests to agencies involved in the Three Agreements, including the request to HUD at issue here.[19]

26. Indeed, as recently revealed by Congressman Sean Duffy, chairman of the House Financial Services Oversight & Investigations Subcommittee, HUD also continues to stonewall Congressional requests for documents pursuant to its investigation of the Three Agreements. This despite (or perhaps because of) evidence developed by Chairman Duffy's subcommittee that the Three Agreements were structured, in a DOJ-HUD collaboration, with a "keen eye to make sure conservative groups could not access any money through these settlements." *See* Timothy R. Homan, *Rep. Duffy Says 'Left-Wing Radical Groups' Benefit From DOJ Mortgage Settlements*, Morning Consult (May 20, 2016), http://bit.ly/27SwIWQ; *see also* Staff of S. Comm. on Homeland Sec. & Gov't Affairs, 114th Cong., *The Justice Department's Housing Settlements: Millions Of Consumer Relief Funds Disbursed With No Guarantees Of Helping Homeowners* (2016), *available at* http://1.usa.gov/1XAxYJA (questioning the nature and oversight of the Three Agreements fund disbursements).

27. Meanwhile, groups such as NeighborWorks have benefited greatly from the RMBS Agreements. In December 2014 and December 2015, Congress passed legislation

---

[19] Through its role on the Task Force, as well as the department whose agencies were impacted by the banks' alleged actions, HUD was involved with the Three Agreements and a beneficiary of them. *See, e.g.*, HUD, Press Release, Obama Administration Settlement With Bank Of America Will Strengthen FHA Fund, Provide Billions In Consumer Relief" (Aug. 21, 2014) *available at* http://1.usa.gov/24FG3wY.

providing for tax relief to homeowners with modified mortgages. Thus, pursuant to the BoA Agreement, funds set aside in a tax relief account instead shifted to NeighborWorks.[20]

28. As a result, NeighborWorks received $122,540,000 from the BoA tax relief account. NeighborWorks has received an additional $1.6 million as part of the consumer relief provisions of the BoA Agreement.[21]

29. The HUD general counsel sits on the NeighborWorks board, as do other prominent government officials. The relationship between HUD and NeighborWorks raises concerns – which are the subject of the Cause of Action Institute FOIA requests – regarding the HUD role in potentially steering RMBS Agreement funds to favored organizations.[22]

30. NeighborWorks has received such massive funding and special treatment despite being the subject of frequent criticism and controversy. *See, e.g.*, Tom Schoenberg and Clea Benson, *The Nonprofit Behind Billions in Mortgage Aid is a Mess,* BloombergBusiness (Mar. 18, 2015), http://bloom.bg/1VkCH1G (reporting on NeighborWorks mismanagement and potential conflicts of interest in contractual relationships).

## JURISDICTION AND VENUE

31. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(E)(iii).

32. Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

---

[20] *See supra* at 18.

[21] *See* Eric D. Green, Fifth Progress Report Monitoring the Performance of Bank of America (May 31, 2016), *available at* http://bankofamerica.mortgagesettlementmonitor.com/Reports/May-31-2016-Report-2014-Bank-of-America-Mortgage-Settlement.pdf.

[22] By statute, NeighborWorks' board of directors consists of the head of the federal financial regulatory agencies and the Secretary of HUD, or their designated representatives. 44 U.S.C. § 8103. The Secretary of HUD has designated his authority to the HUD general counsel, Helen Kanovsky. *See* NeighborWorks America, *About Us/Leadership,* http://www.neighborworks.org/About-Us/Leadership.

**PARTIES**

33. Cause of Action Institute is a non-profit strategic oversight group committed to ensuring that government decision-making is open, honest, and fair. In carrying out its mission, Plaintiff uses various investigative and legal tools to educate the public about the importance of government transparency and accountability. Plaintiff regularly requests access under FOIA to the public records of federal agencies, entities, and offices, and disseminates its findings, analysis, and commentary to the general public.

34. HUD is an agency within the meaning of 5 U.S.C. § 552(f)(1) and has possession, custody, and control of records to which Plaintiff seeks access and which are the subject of this Complaint.

**FACTS**

35. On July 8, 2015, CoA Institute submitted a FOIA request to HUD seeking records related to the HUD involvement in the Three Agreements. Ex. 1.

36. The request focused on the HUD communication with other relevant parties, both within and outside of the government, regarding the Three Agreements (and specific topics related to the agreements), the disbursement of funds pursuant to the Three Agreements and records related to the HUD views on government spending and on potential beneficiaries of the Three Agreements.

37. Specifically, the request sought access to the following records (for the time period of January 1, 2013 to the present):

   a. All communications within HUD, and/or between HUD and any of the following: a) Bank of America; b) Citigroup; c) JP Morgan; d) FDIC; e) SEC; f) DOJ; g) Treasury; h) the White House; i) the RMBS Working Group; and j) the states of California, Delaware, Illinois, Kentucky, Maryland, Massachusetts, and New York, regarding the RMBS Settlements. You may limit the scope of this search to communications referring or relating to "Operation ChokePoint", "CDFI", HUD-

       approved housing counsel*", "Neighborworks", "Home Affordable Mortgage Program" and "HAMP".

    b. All records regarding the (past or future) disbursement of funds pursuant to the RMBS Settlements, whether to a federal agency, third-party, state, or other, including: a) the name of the recipient(s), b) the amount of funds, and c) any limitations/restrictions on the use of funds.

    c. All records referring or relating to (a) Huduser.org; (b) OMB Circular A-25; (c) the Chief Financial Officers Act; (d) the Anti-Deficiency Act; (e) "publicity or propaganda"; (f) the Colorado Division of Housing; (g) Empire Justice Center; (h) Center for New York City Neighborhoods.  You may limit the scope of this search to records concerning the Consumer Relief Donation Provisions.

38. By letter, dated August 3, 2015, HUD acknowledged receipt of Plaintiff's request and assigned it the tracking number 15-FI-HQ-01726.  HUD did not invoke or request any extension of the statutorily mandated time period within which to respond to COA's request.  Ex. 2.

39. On October 6, 2015, HUD sent an email to CoA Institute, informing Plaintiff that a search for records was ongoing and apologizing for the delay in processing the request.  Ex. 3.

40. Through the date of this Complaint, HUD has failed to respond to the CoA Institute FOIA request, now more than a year old, beyond these pro forma acknowledgments and updates.

## COUNT 1
## Violation Of FOIA: Failure To Comply With Statutory Deadlines

41. Plaintiff repeats paragraphs 1 through 24.

42. FOIA requires agencies to respond to requests with a final determination within twenty (20) business days or, in "unusual circumstances," within thirty (30) business days. 5 U.S.C. §§ 552(a)(6)(A)–(B). If an agency requires additional time, FOIA mandates that the agency provide the requester "an opportunity to arrange with the agency an alternative time frame for processing the request[.]" *Id.* § 552(a)(6)(B)(ii).

43. HUD failed to issue a final determination on or produce any documents responsive to Plaintiff's request within the applicable FOIA time limits.

44. HUD also failed to comply with FOIA in that it never "arrange[d] . . . an alternative time frame" for responding to the FOIA requests. Neither HUD's acknowledgement letter nor other communications provide an estimated date of completion or an invitation to contact the agency for the purposes of negotiating an "alternative" response date for the request.

45. Plaintiff has fully exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests and prays that this Court:

a. order HUD to process FOIA request No. 15-FI-HQ-01726 expeditiously and make a final determination within twenty (20) business days of the date of the Order;

b. order HUD to produce all responsive records promptly after issuing their final determination;

    c.      order HUD to issue a *Vaughn* index accompanying the records produced explaining each redaction or withholding;

    d.      award Plaintiff its costs and reasonable attorney fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

    e.      grant such other relief as the Court may deem just and proper.

Date: July 13, 2016                                  Respectfully submitted,

                                                  */s/ Julie Smith*

Alfred J. Lechner, Jr. (*pro hac vice* pending)
Julie Smith
D.C. Bar. No. 435292
David Fischer
D.C. Bar. No. 477236
Joshua N. Schopf
D.C. Bar. No. 465553

CAUSE OF ACTION INSTITUTE
1875 Eye Street, NW, Suite 800
Washington, DC  20006
Telephone: (202) 499-4232
Facsimile: (202) 330-5842
julie.smith@causeofaction.org
david.fischer@causeofaction.org
josh.schopf@causeofaction.org
*Counsel for Plaintiff*